35 F.3d 565
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Janice M. CRAWFORD, Plaintiff-Appellant,
v.
Samuel K. SKINNER, Secretary, Department of Transportation,
Defendant-Appellee.
 No. 93-6038.
 United States Court of Appeals, Sixth Circuit.
 Aug. 15, 1994.
 
 1
 Before: JONES and BATCHELDER, Circuit Judges, and JOINER, Senior District Judge.*
 
 ORDER
 
 2
 Plaintiff appeals a district court judgment for the defendant following a bench trial in his employment discrimination action filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e. The parties waived oral argument and, upon examination, this panel unanimously agrees that oral argument is not needed. Fed.R.App.P. 34(a).
 
 
 3
 In 1991, Janice Crawford brought a Title VII action against the Secretary of Transportation alleging racial and sexual discrimination in employment training and a retaliatory discharge. Crawford contended this discrimination took place during her efforts to become an air traffic controller. The matter ultimately proceeded to a bench trial and resulted in a judgment for the Secretary. This appeal followed and the parties have briefed the issues.
 
 
 4
 In 1985, Crawford accepted employment with the Federal Aviation Administration and she was promoted two years later into the Air Traffic Controller Trainee class. Crawford was terminated from the program twice in 1988. The first termination took place on September 1, 1988, and was followed by an informal complaint of racial and sexual discrimination with the Equal Employment Opportunity Commission. Crawford was reinstated on September 12, 1988, and terminated again on September 22, 1988, following retesting. She ultimately filed suit under Title VII in which she alleged that the initial termination was motivated by improper racial and sexual discrimination, the terms of her retraining after reinstatement were onerous and the second termination was again the result of racial and sexual discrimination.
 
 
 5
 The district court conducted a three day trial in which at least nine witnesses were called. The district court held for the defendant and made his oral findings a part of his decision. In the findings the court noted inter alia that Crawford did not establish a comparable non-minority employee was treated more favorably, that Crawford was in fact given a beneficial retesting procedure, that Crawford was afforded "to some extent" many more opportunities to succeed than others and that Crawford simply did not possess the ability to become an air traffic controller. Crawford's counsel challenges the adequacy and content of these findings in this appeal.
 
 
 6
 The plaintiff in a Title VII action bears the initial burden to demonstrate a prima facie case by a preponderance of evidence. To establish a prima facie case in this context, the plaintiff must show: 1) she was a member of a protected class; 2) she was subject to an adverse employment action or was discharged; 3) she was qualified for the position; and, 4) she was replaced by a person outside of the protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once a Title VII plaintiff establishes a prima facie case, a presumption arises that the employer unlawfully discriminated against her. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). The employer may rebut this presumption by articulating some legitimate, nondiscriminatory reason for the employee's discharge. The onus then shifts to the employee to demonstrate that the employer's stated reason for termination was a pretext for discrimination. St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2747 (1993).
 
 
 7
 A plaintiff who is unable to make out a prima facie case due to an inability to demonstrate that she was replaced by a member of a non-protected class, may yet do so by showing that a comparable non-protected person received better treatment. Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir.1992). This element of the test is satisfied by a showing that the plaintiff was a member of a protected class and that, for the same or similar conduct, she was treated differently from similarly-situated non-minority employees. Id.
 
 
 8
 This court's standard of review in a Title VII discrimination case is narrow. Under Fed.R.Civ.P. 52(a), a district court's findings of fact should not be reversed unless clearly erroneous. Zamlen v. City of Cleveland, 906 F.2d 209, 217 (6th Cir.1990), cert. denied, 499 U.S. 936 (1991). Clear error will lie only when the reviewing court is left with the definite, firm conviction that a mistake has been made. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). The issue is not whether the district court reached the best conclusion, but whether the evidence before the court supports the district court's findings. Heights Community Congress v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir.1985), cert. denied, 475 U.S. 1019 (1986). The district court's findings based on the credibility of the witnesses before it are entitled to great deference on appeal. Wooldridge v. Marlene Indus. Corp., 875 F.2d 540, 543 (6th Cir.1989).
 
 
 9
 In the present case, plaintiff Crawford attempted to prove that her first and second terminations from the air traffic training program were the result of racial and sexual discrimination and not her deficient performance. A part of her case consisted of her attempt to establish under Mitchell that a comparable non-minority trainee, Mitchell Bird, received more favorable treatment than did she. In support of these contentions, counsel for plaintiff Crawford raises a number of claims on appeal. These assignments of error, however, assume that Crawford established a prima facie case of discrimination at trial. In fact, there is ample evidence in the record to support the district court's conclusion that Crawford simply did not possess the ability to become an air traffic controller (the third part of the McDonnell test) and that Crawford was unable to prove that a similarly-situated non-minority employee received more favorable treatment than Crawford (the Mitchell test).
 
 
 10
 The evidence in support of the district court's conclusions is as follows: The training program in which Crawford participated consisted of thirteen different phases. A trainee had to pass each phase before moving on to the next one. The radar phase of the training was phase 11. Before entering phase 11, trainees were sent to an FAA academy to learn the basics of radar control. Crawford attended this academy but barely made passing grades. One of her instructors, Gene Campbell, noted this and suggested that she might wish to do some extra training before formally entering phase 11. Crawford did not do so and she ultimately failed that phase of her training. Lead Instructor Albert Krosp, an instructor with first-hand knowledge of Crawford's training performance, testified there was no possible way that she could "make it" as an traffic controller. Krosp noted that Crawford used a "helter-skelter" method of controlling air traffic, lacked the necessary "awareness" for the position and "would constantly get her left and her right mixed up." This deficient performance took place even after Krosp assigned two remedial instructors to assist Crawford in this phase of her training. This testimony completely supports the court's findings on Crawford's ability to perform the task of air traffic controller.
 
 
 11
 The evidence concerning the alleged comparable non-minority employee is equally unavailing to Crawford's appeal. One of Crawford's main contentions is that she was terminated from training when she failed the radar control phase but a white male trainee, Mitchell Bird, also failed and was not terminated. Evidence at trial, however, fully buttresses the district court's conclusion that Crawford's proof on this point was insufficient because Bird did not fail the radar test. Bird testified at length and in great detail to the effect that, although initially he was given a failing evaluation for his radar proficiency test, he was later able to prove some of the alleged errors did not occur. This testimony was corroborated by Gene Campbell. The record is clear; Crawford did not make out a prima facie case of employment discrimination.
 
 
 12
 Finally, counsel for Crawford questions the adequacy of the oral findings of fact. This court reviews findings of fact made pursuant to the dictates of Fed.R.Civ.P. 52 for sufficient specificity to indicate the basis for the conclusions of law. In re Allied Supermarkets, Inc., 951 F.2d 718, 726 (6th Cir.1991). It is readily apparent that the findings at issue, although perhaps not as specific as possible, still provide an entirely adequate basis for appellate review of the core conclusions of law, namely, the specific failures in Crawford's effort to make out a prima facie case of employment discrimination. This claim lacks merit.
 
 
 13
 Accordingly, the district court's judgment is affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior U.S. District Judge for the Eastern District of Michigan, sitting by designation